```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

FREDDY MARRERO,                  :
                                 :
     Plaintiff,                  :
                                 :
V.                               :     CASE No. 3:13-CV-0028(RNC)
                                 :
WEIR, et al.,                    :
                                 :
     Defendants.                 :
```

                           RULING AND ORDER

Plaintiff Freddy Marrero brings this action pro se and in forma pauperis under 28 U.S.C. § 1983 against personnel of the Connecticut Department of Correction alleging violations of his rights under the First, Eighth and Fourteenth Amendments. Defendants have moved to dismiss all claims for lack of subject matter jurisdiction and failure to state a claim on which relief may be granted. (ECF No. 22). For reasons that follow, the motion to dismiss is granted.

I. Background

The amended complaint alleges the following. On April 29, 2011, while incarcerated at Osborn Correctional Institution ("Osborn"), plaintiff was accused of conspiring with a correctional officer to smuggle contraband into the facility. He was strip searched, transferred to MacDougall-Walker Correctional Institution, and placed in administrative detention. The allegation that plaintiff had conspired with a correctional officer to smuggle drugs into Osborn arose from a recorded

telephone conversation between the plaintiff and his mother on April 10, 2011.

On May 6, 2011, plaintiff met with Captain Beaudry, who asked him to disclose the name of the officer with whom he had conspired to bring drugs into Osborn; plaintiff denied knowledge of any conspiracy.  On May 10, 2011, plaintiff met with Captain Zawilinski and a state police officer.  Zawilinski told plaintiff that he would be transferred out of restrictive housing if he revealed the name of the officer bringing drugs into Osborn.  Id. ¶ 18.  Plaintiff again denied knowledge of any such activity.  Zawilinski threatened that the state police were going to arrest plaintiff and his mother, then played a tape of the April 10 telephone conversation, explaining that the conversation appeared to be about drugs.  Lieutenant Torres entered the room and attempted to induce plaintiff to help himself by cooperating with the investigation; when plaintiff refused, Torres responded: "I will personally make the rest of your bid [time] hard for you."

On May 25, 2011, plaintiff received a disciplinary report for conspiracy to convey contraband.  The report, prepared by Officer Lizon, stated that the April 10 conversation demonstrated that plaintiff was working with a staff member to smuggle suboxone pills into Osborn.  Plaintiff was informed that his nephew was sent to prison as a result of his alleged involvement in the smuggling.  On June 17, 2011, following a hearing at which

plaintiff appeared but declined an advocate, plaintiff was found guilty of conspiracy to convey contraband and given fifteen days time served in restrictive housing, sixty days loss of phone privileges, and thirty days loss of recreation.

On June 9, 2011, plaintiff received a second disciplinary report for security tampering, based on an attempted three-way telephone call during a different phone conversation with his mother on April 8, 2011.  Plaintiff apparently pleaded guilty to this charge.  <u>See</u> Disciplinary Process Summary Report, Exh. E, Defs.' Opp, to Mot. for Prelim. Inj., at *86 (ECF No. 10).

After learning from his mother that she was not on his visiting list, plaintiff wrote to the visiting clerk on September 23, 2011, requesting that a visiting form be mailed to his mother.  On October 10, 2011, he was notified that his mother was denied approval to visit him.  He subsequently received a message from Warden Murphy explaining: "[Y]ou know why your mother isn't on the list.  I have no control over this issue, only you do." Plaintiff submitted a number of complaints to Beaudry concerning the restriction on his visitation privileges but all of them went unanswered.  Plaintiff's phone privileges also were not restored because the investigation into drug smuggling remained open.

In mid-December 2011, plaintiff was summoned to meet with Paine and Beaudry, who informed him that it was in his best interest to talk to Zawilinski.  Paine threatened to send

plaintiff to restrictive housing pending another investigation. Zawlinski joined the meeting by speakerphone and asked plaintiff for the name of the correctional officer that was smuggling drugs into Osborn, offering to reinstate his phone and visitation privileges if he cooperated.  Plaintiff again denied knowledge of any smuggling.

On January 15, 2013, plaintiff wrote a letter to then-Commissioner Arnone complaining that his phone pin number had not been reactivated and visitation privileges with his mother had not been restored.  Defendant Weir, Director of Security, responded:

> "As you know, you were involved in an investigation conducted by this office and as a result of our findings and your unwillingness to cooperate with the investigation, certain sanctions were imposed.  At that time, you were made aware of the sanctions and the reason why.  You were also informed that as soon as you are willing to cooperate with this office, we will begin to reduce/lift some of the sanctions.  If you are considering doing so, please contact this office."  Ex. Q at *40, Appendix A, Defs.' Mot. to Dismiss (ECF No. 22-3).

As of the time the amended complaint was filed on July 25, 2013, plaintiff's phone and visitation privileges had not been restored.

II. Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the plaintiff. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007). "While pro se complaints must contain sufficient factual allegations to meet the plausibility standard, the court is obliged to read pro se submissions with special solicitude and to interpret them to raise the strongest arguments that they suggest." Sealey v. Affiliated Computer Servs., Inc., 522 F. App'x 35, 36 (2d Cir. 2013) (citations omitted).

*A. Eighth Amendment Claims*

Defendants have moved to dismiss plaintiff's Eighth Amendment claims on the ground that the amended complaint does not allege cruel and unusual punishment. Plaintiff alleges that his Eighth Amendment rights have been violated because he has been improperly deprived of phone and visitation privileges and because he was transferred, placed in administrative detention and subjected to additional discipline despite insufficient evidence. I agree with defendants that these allegations are insufficient to state an Eighth Amendment claim.

The Eighth Amendment requires prison officials to provide for prisoners' "basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety." DeShaney v. Winnebago Cty Dep't. of Social Servs., 489 U.S. 189, 200 (1989). Conditions of confinement can give rise to an Eighth Amendment

violation if (1) the deprivation is sufficiently serious and (2) the officials involved in the deprivation act with deliberate indifference to inmate health or safety. Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). The first element is satisfied when prison conditions violate contemporary standards of decency; the second element is satisfied when correctional officials are aware of and disregard a substantial risk of serious harm. See Riddick v. Arnone, 3:11CV631 SRU, 2012 WL 2716355, at *5 (D. Conn. July 9, 2012), appeal dismissed (Jan. 16, 2013). Here, neither element is met.

Plaintiff does not allege a deprivation that is sufficiently serious to support a claim under the Eighth Amendment, such as the "'unnecessary and wanton infliction of pain'" or "'deprivations denying the minimal civilized measures of life's necessities.'" Rivera v. Senkowski, 62 F.3d 80, 85 (2d Cir. 1995) (quoting citing Wilson v. Seiter, 501 U.S. 294, 303 (1991)). To the extent he relies on the indefinite withholding of his phone privileges and visitation with his mother, his claim is unavailing notwithstanding his assertions that these sanctions were unsupported by evidence, in excess of sanctions outlined in the Code of Penal Discipline, and imposed on him coercively in an effort to force him to provide information about an alleged co-conspirator. "[L]oss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of

6

visitation and telephone privileges is no exception to this rule."  Thrower v. N.J. Dep't of Corr., CIV A 07-3434 FSH, 2007 WL 2683007, at *4 (D.N.J. Sept. 7, 2007); see id. (visitation contacts do not qualify as necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety); see also Overton v. Bazzetta, 539 U.S. 126, 137 (2003) (withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline does not constitute a dramatic departure from accepted standards for conditions of confinement); Zimmerman v. Burge, 06CV0176(GLS-GHL), 2008 WL 850677, at *3 (N.D.N.Y. Mar. 28, 2008) (ongoing and indefinite restriction on contact visits not cruel and unusual punishment); Hernandez v. McGinnis, 272 F. Supp. 2d 223, 228 (W.D.N.Y. 2003)(roughly three-year suspension of visitation rights not an Eighth Amendment violation; the revocation, which was not permanent or arbitrary, served a legitimate purpose of deterring visit-related misconduct and did not dramatically depart from accepted standards for conditions of confinement, create inhumane conditions, or otherwise constitute cruel and unusual punishment); Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175-76 (3d Cir. 2007) (two-year loss of telephone and visitation privileges did not constitute the excessive punishment or extreme deprivation prohibited by the Eighth Amendment); Daniel v. Chesney, CIV.A. 1:CV-04-300, 2005 WL 2674543 (M.D. Pa. Oct. 20,

2005) (deprivations of privileges including radios, televisions, weekly phone calls, and regular commissary, among other amenities, insufficient to support an Eighth Amendment claim of cruel and unusual punishment). Further, the allegations in the amended complaint do not suggest that the named defendants acted with deliberate indifference to a substantial risk of serious harm.

To the extent plaintiff's claims under the Eighth Amendment are based on his transfer and placement in administrative detention, the claims do not provide a basis for relief. An inmate has no constitutional right to avoid transfer to a different facility. See Jarecke v. Hensley, 552 F. Supp. 2d 261, 265 (D. Conn. 2008). Moreover, applicable administrative directives permit placement in administrative detention pending an investigation, see Administrative Directive 9.4 ¶ 3.A.2, and plaintiff does not allege that he was deprived of any required review of his placement in administrative detention. Nor does he challenge the conditions of confinement he faced while in administrative detention; in particular, he does not assert that he was denied "the minimal civilized measures of life's necessities" such that the Eighth Amendment is implicated.

*B. Fourteenth Amendment Due Process Claims*

Plaintiff alleges that Torres, Beaudry, Lizon, Paine and Zawilinksi "allowed [him] to be disciplined," including loss of

good time credits and the ability to earn them, after he had been found guilty of conspiracy to convey contraband, even though the investigation was still ongoing. See Am. Cmpl. (ECF No. 16) ¶ 71.  Second, he challenges the indefinite loss of his phone and visitation privileges, a sanction not in any administrative directive, allegedly imposed despite a lack of evidence against him and without notice, a hearing, or a chance to appeal the sanctions.  See Am. Cmpl. (ECF No. 16) ¶¶ 73, 75.  Defendants move to dismiss these claims on the grounds that plaintiff does not have a constitutional right to the privileges in question and that he received all the process he was due.  I agree that the claims should be dismissed.

To state a claim for relief based on deprivation of the right to procedural due process, plaintiff must allege facts showing: (1) that he had a protected liberty interest, and (2) that he was deprived of that interest without the process required by the Constitution.  See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000).  Plaintiff's allegations fall short with regard to both requirements.[1]

---

[1] The amended complaint does not refer to substantive due process, which prohibits the government from depriving a person of liberty in a way that shocks the conscience.  To the extent it can be construed to include such a claim, the claim is unavailing. "Convicted prisoners . . . receive no greater protection from the substantive due process clause than they receive from the Eighth Amendment."  Mele v. Connecticut, 3:06CV1741 (SRU), 2007 WL 445488, at *2 (D. Conn. Feb. 9, 2007). For the reasons stated in the text, the amended complaint does not state a claim for unconstitutional conditions of confinement

Restrictions on an inmate's phone and visitation privileges are upheld when they are justified by legitimate safety and security concerns and other means of communication are available. Plaintiff's allegations show that the restrictions imposed on him meet this standard. Plaintiff was found guilty of conspiracy to convey contraband into the correctional facility. The loss of phone and visitation privileges resulted from that finding and from his unwillingness to cooperate in a related investigation. The restrictions on his privileges did not preclude him from communicating by other means. The defendants offered to restore his privileges if he cooperated with their investigation. In these circumstances, the withholding of his phone and visitation privileges did not violate his due process rights. See Santos v. Bureau of Prisons, 1:05-CV-0008, 2006 WL 709509, at *2 (M.D. Pa. Mar. 20, 2006) (citing Sandin, 515 U.S. at 483); see also Atkinson v. Willingham, 3:05-CV-673 (RNC), 2007 WL 685168, at *5 (D. Conn. Mar. 3, 2007) (temporary loss of visiting privileges does not implicate protected liberty interest); Griffin v. Cleaver, 3:03CV1029(DJS)(TPS), 2005 WL 1200532, at *6 (D. Conn. May 18, 2005) (plaintiff had no constitutional right to telephone use, social visits and commissary privileges, therefore such sanctions did not support a claim for denial of due process); Hall v. McCabe, CA 8:11-1317-TLW-JDA, 2011 WL 5083219, at *2 (D.S.C. July 8, 2011) report and recommendation adopted, CIV.A. under the Eighth Amendment.

8:11-1317-TLW, 2011 WL 5082201 (D.S.C. Oct. 25, 2011) (no constitutionally protected liberty interest implicated in loss of canteen, telephone and visitation privileges for 540 days).

Plaintiff's claim that he was wrongfully deprived of the ability to earn good time credits fails because he does not have a protected liberty interest in future good time credit. See Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit."); Joyce v. Hanney, 3:05CV1477 (WWE), 2009 WL 563633, at *6 (D. Conn. Mar. 4, 2009) ("Connecticut courts have held that a liberty interest is created only when an inmate loses previously earned good time credit; the loss of the ability to earn good time credit in the future does not create a liberty interest.").

To the extent plaintiff seeks restoration of good time credits that he had already earned, his claim fails because, although "prisoners do have a constitutional right to good-time credits that have already been earned . . . § 1983 is not the proper vehicle . . . to seek redress." Ebron v. Lantz, 3:04CV1375MRK, 2006 WL 18827, at *3 (D. Conn. Jan. 4, 2006). The Supreme Court has held that, if a determination favorable to the

11

plaintiff in a section 1983 action "would necessarily imply the invalidity of his conviction or sentence," the plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid before he can recover damages under section 1983.  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). This same rule applies to challenges used in prison disciplinary proceedings when the inmate has forfeited good time credit as a disciplinary sanction.  See Edwards v. Balisok, 520 U.S. 641, 644-47 (1997).  "[A]n inmate's sole judicial remedy for restoration of good time credits is a writ of habeas corpus." Laws v. Cleaver, 140 F. Supp. 2d 145, 153-54 (D. Conn. 2001).

Any remaining due process claim related to the finding of guilty on the disciplinary report for conspiracy to convey contraband fails because plaintiff appears to have received all the process he was due.  Plaintiff does not challenge the process the led to the guilty finding and the exhibits show that he received the requisite process.  In a prison disciplinary hearing, "[i]nmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken."  Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004).  Here, plaintiff received a copy of the disciplinary report, including a description of the violation, on

the day it was issued.  Disciplinary Report, Ex. A at *4, Appendix A, Defs.' Mot. to Dismiss (ECF No. 22-3).  According to the Disciplinary Process Summary Report, he received a hearing on June 17, 2011, at which he declined an advocate and did not present any witnesses.  Disciplinary Process Summary Report, Ex. C at *9-10, Appendix A, Def.'s Mot. to Dismiss (ECF No. 22-3).  He received a written statement of the disposition, including supporting facts and reasons.  Id.  He has not sued the hearing officer and there is no allegation that the officer acted improperly.

   *C. First Amendment Claim*

   Plaintiff claims that the attempts made by Weir, Chapdelaine, Zawilinksi, Torres, and Beaudry to coerce him to cooperate with their investigation by withholding his telephone and visitation privileges violated his rights under the First Amendment.  Defendants move to dismiss these claims on the ground that an inmate's communications may be restricted in this manner without violating the First Amendment.  Although "[a] prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection," Morgan v. LaVallee, 526 F.2d 221, 225 (2d Cir. 1975), because of the security concerns inherent in correctional facilities, "the First Amendment's protection of communication is not without restriction."  Pitsley v. Ricks, No. 96-CV-0372NAMDRH, 2000 WL

362023 at *4 (N.D.N.Y. Mar. 31, 2000); see also Pell v. Procunier, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"; however, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system."). I agree that the deprivation of plaintiff's privileges in the circumstances of this case does not violate the First Amendment.

The restrictions on plaintiff's phone privileges, which were implemented after the guilty finding and upon his refusal to cooperate with the ongoing investigation, do not support a constitutional claim because there is no allegation that he was unable to communicate with family members and friends by other means. See, e.g., Riddick v. Arnone, No. 3:11cv631, 2012 WL 2716355, at *3 (D. Conn. July 9, 2012) (dismissing claim that prison officials denied plaintiff access to telephone on ground that inmates do not have a "constitutional right to unrestricted telephone use" and plaintiff did not allege that he was barred from communicating through mail during period when he could not use telephone); Henry v. Davis, No. 10-Civ.-7575(PAC)(JLC), 2011 WL 5006831, at *2 (S.D.N.Y. Oct. 20, 2011) (allegations challenging restrictions on phone calls failed to state

cognizable federal claim because "[p]risoners have no constitutional right to unrestricted telephone use" and plaintiff did not allege that he was denied alternate methods of communication).  The restriction on plaintiff's visitation privileges does not run afoul of the First Amendment because there is no allegation that the deprivation was malicious and the exhibits show that it was rationally related to security concerns.  Mills v. Fischer, 497 F. App'x 114, 116 (2d Cir. 2012) cert. denied, 133 S. Ct. 1255 (U.S. 2013) (although "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation," where plaintiff alleges only rudeness and not malice, the complaint fails to state a plausible claim under the First Amendment; regulations that bear a rational relation to legitimate penological interests do not violate that right); Johnson v. Goord, 198 F.3d 233 (2d Cir. 1999) (three-month suspension of visits to enforce prohibition on unacceptable physical contact between inmates and visitors not violation of First Amendment in light of justifications and fact that plaintiff remained free to communicate with his wife by mail and receive other visitors); Patterson v. City of New York, 11 CIV. 7976 DLC, 2012 WL 3264354, at *8 (S.D.N.Y. Aug. 9, 2012) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's

constitutional right."); Adeyola v. Gibon, 537 F. Supp. 2d 479, 481 (W.D.N.Y. 2008) ("[T]here is no absolute constitutional right to visitation, and, at the very least, first amendment values must give way to reasonable considerations of prison management.") (internal citations omitted); Midalgo v. Bass, 9:03CV1128(NAM/RFT), 2006 WL 2795332, at *16 (N.D.N.Y. Sept. 26, 2006) ("[F]amily visitations for inmates only constitute a privilege and not a right"). Indeed, the Court is required to grant "wide-ranging deference" to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).[4]

*D. Qualified Immunity*

Finally, defendants argue that they are entitled to qualified immunity, which protects a government official from the burdens of litigation unless the official's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is clearly established if (1) it was defined with reasonable specificity at the time of the

---

[4] To the extent plaintiff seeks to bring a First Amendment claim of retaliation, his claim fails because he does not allege that he engaged in constitutionally protected conduct and that the conduct was a substantial or motivating factor for the adverse actions at issue. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

16

defendants' actions, (2) the Supreme Court or Second Circuit had affirmed the rule, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful. Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).

I agree that defendants are entitled to qualified immunity. Plaintiff was found guilty of conspiracy to convey contraband into Osborn and pleaded guilty to security tampering based on phone conversations with family members and he refused to opportunities to cooperate.  Prison officials responded by taking away his phone privileges and restricting his visitation privileges, which case law has repeatedly condoned as permissible when rationally related to security concerns.  Given the state of the case law at the pertinent time, even if the deprivation of plaintiff's privileges violated his constitutional rights, a reasonable defendant would not have understood that the deprivation was unlawful.

III. Conclusion

Accordingly, the motion to dismiss is hereby granted.  The Clerk may close the case.

So ordered this 26th day of September 2014.

```
                              _____/s/ RNC_____
                                     Robert N. Chatigny
                                United States District Judge
```